**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IRENE HULL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-CV-417-TCK-TLW |
| ) | |
| MARK WOLLMERSHAUSER, JR., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is Defendant Mark Wollmershauser, Jr.'s Motion to Dismiss (Doc. 14), wherein Defendant moves to dismiss this case based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.     Background**

On April 5, 2007, Tulsa Police Officer Mark Wollmershauser, Jr. ("Defendant") observed Plaintiff Irene Hull ("Plaintiff") walking on the side of the road while he was conducting a routine patrol in the area of 2600 North Madison Avenue in Tulsa, Oklahoma. Defendant claims he ordered Plaintiff to stop because, pursuant to City of Tulsa traffic code, Plaintiff was walking on the wrong side of the road. According to Defendant, Plaintiff refused to stop, continued to walk along the side of the road, and eventually began running away from him. Defendant claims he again told Plaintiff to stop, that she refused his order, and that he eventually grabbed her by the back of the shirt and put her face down on the ground. Defendant placed Plaintiff under arrest and transported her to the police station at 300 North Denver. Defendant claims that while in route to the station, Plaintiff yelled obscenities and repeatedly kicked his dashboard. Once at the station, Defendant maintains that Plaintiff began to bang her head repeatedly against a glass door. Defendant claims that he

lowered Plaintiff's head for protection, but that Plaintiff's head became "completely loose" and slammed down on the table.

After a non-jury trial held in the Municipal Court of the City of Tulsa ("Tulsa Municipal Court") before the Honorable Judge Brad Powers, Plaintiff was convicted of the following charges as a result of the above-described events: (1) failing to walk facing traffic in violation of Tulsa, OK., Traffic Code tit. 37, § 1104.B; (2) obstructing or resisting a police officer in violation of Tulsa, OK., Penal Code tit. 27, § 300(A) ("first obstruction count"); and (3) obstructing or resisting a police officer in violation of Tulsa, OK., Penal Code tit. 27, § 300(B) ("second obstruction count") (collectively "municipal court convictions"). The first obstruction count was in relation to Plaintiff's refusal to stop at the command of Defendant when she was walking on Madison Avenue. The second obstruction count was for Plaintiff's actions in kicking the dashboard of Defendant's car and resisting a search of her person at the police station.

Plaintiff thereafter brought this suit, claiming that Defendant deprived her of her federal civil rights in violation of 42 U.S.C § 1983 by using excessive force against her in connection with the April 5, 2007 events. Specifically, Plaintiff's First Amended Complaint alleges that after she was approached by Defendant, "Defendant tackled the Plaintiff for allegedly walking the wrong way down the street." (First. Am. Compl. ¶ 9.) Plaintiff also claims that "[a]t the time Plaintiff was being booked into jail for walking down the wrong side of the street, the Defendant became irritated at the Plaintiff and forcibly slammed the Plaintiff's head into the metal booking table causing a tooth to become lodged in her upper jawbone, and also caus[ing] a facial contusion." (Id. ¶ 13.)

Defendant now moves to dismiss pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and (12)(b)(6). Specifically, Defendant argues: (1) this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (2) Plaintiff has failed to state a claim upon which relief can be granted under the *Heck v. Humphrey* doctrine; and (3) Defendant is entitled to qualified immunity.

## II.     *Rooker-Feldman* Doctrine

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id*. "In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id*. "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id*. "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225. In this case, Defendant has attached evidence outside the pleadings regarding the trial in the Tulsa Municipal Court and resulting judgments against Plaintiff. Thus, the Court construes the attack as factual.

Defendant's motion to dismiss for lack of subject matter jurisdiction is based on the *Rooker-Feldman* doctrine. This doctrine holds that, since Congress vested district courts only with original jurisdiction, lower federal courts have no jurisdiction "over challenges to state-court decisions in

particular cases arising out of judicial proceedings even if those challenges allege that the state court's action [is] unconstitutional." *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). Thus, federal district courts are precluded from "effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006); *see Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

The Tenth Circuit has explained that the *Rooker-Feldman* doctrine "only applies when the injury alleged by the plaintiff [] was caused by the state court judgment." *Mo's Express, LLC*, 441 F.3d at 1237 (internal citations omitted). When the relief sought by a plaintiff "would not reverse or undo the state-court judgment, *Rooker-Feldman* does not apply." *Id.* Further, the *Rooker-Feldman* doctrine "does not apply 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.' To the contrary, a party may lose in state court and then raise precisely the same legal issues in federal court, so long as the *relief sought* in the federal action would not reverse or undo the *relief granted* by the state court." *Id.*

Based on these principles, the Court finds Defendant's assertion of the *Rooker-Feldman* doctrine to be misplaced because the relief sought by Plaintiff in this action – namely, judgment against Defendant for violation of section 1983 – would not reverse or undo the Tulsa Municipal Court convictions. The convictions rendered against Plaintiff were the result of Plaintiff's failure to walk on the correct side of the road and obstruction and resistance of a police officer. The Court finds no automatic correlation between these convictions and a viable claim of excessive force under section 1983.

Specifically, Plaintiff's conviction for walking on the wrong side of the road has no arguable relation to her excessive force claim, as there is no factual overlap between the two. The excessive force claim arises out of Plaintiff's allegations that Defendant forcibly tackled her and then later slammed her head into a metal table; these actions are not related to Plaintiff's sole act of walking on the wrong side of the road. Although there exists a factual overlap between the convictions for resisting a police officer and Plaintiff's section 1983 claim, the Court does not find that recovery on Plaintiff's section 1983 claim would undo her convictions for resisting a police officer. Defendant has failed to offer any authority demonstrating that a federal excessive force claim cannot co-exist with a state court conviction for resisting and/or obstructing a police officer, and, in fact, there exists case law suggesting the opposite. *See Gregory v. Oliver*, 226 F. Supp. 2d 943, 952 (N.D. Ill. 2002) ("But that suggested one-to-one correlation between (1) a conviction for resisting arrest . . . and (2) the absence of a viable claim of excessive force is simply nonexistant."). It is entirely possible that, although the Tulsa Municipal Court found that Plaintiff unlawfully resisted Defendant, Defendant imposed excessive force in overreacting to Plaintiff's resistance. Further, as discussed in more detail in Section III, *infra*, no evidence of excessive force was presented to the Tulsa Municipal Court. The convictions rendered against Plaintiff therefore had no bearing on whether Defendant exerted excessive force. The Court thus rejects Defendant's assertion of the *Rooker-Feldman* doctrine.

**III.    *Heck v. Humphrey* Doctrine**

Defendant argues that Plaintiff's action should be dismissed pursuant to Rule 12(b)(6) based on the doctrine first enunciated in *Heck v. Humphrey*, 512 U.S. 477 (1994). In analyzing a motion to dismiss based on Rule 12(b)(6), the Court "must look for plausibility in the complaint." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (internal quotations omitted). "Under this

standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Teigen*, 511 F.3d at 1078 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486. The Court further stated that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated. *Id.* Defendant cites *Heck* in support of the contention that "since [P]laintiff was convicted of resisting arrest . . ., her claims of excessive force should be dismissed." (Mot. to Dismiss 9.)

Again, the Court rejects Defendant's argument. As outlined above, the Court does not find that a judgment in favor of Plaintiff on her section 1983 claim necessarily implies the invalidity of her municipal court convictions because the Tulsa Municipal Court did not have the opportunity to make any determination as to whether Defendant used excessive force against Plaintiff. *See* Section II, *supra*; *see also VanGlider v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (holding that a successful section 1983 suit for excessive force would not imply the invalidity of the underlying conviction for resisting a police officer under *Heck* when plaintiff claimed that police officer used excessive force in responding to plaintiff's resistance) ("Were we to uphold the application of *Heck* in this case, it

would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted – and be shielded form accountability under civil law – as long as the prosecutor could get the plaintiff convicted on a charge of resisting.")

Further, the Court finds the case cited by Defendant – *Adams v. Dyer*, No. 06-1125, 2007 WL 431511 (10th Cir. Feb. 9, 2007) – is distinguishable from the present case. In *Adams*, plaintiff brought an excessive force claim under section 1983 after being convicted of resisting arrest and second degree assault upon police officers in Colorado state court. The Tenth Circuit upheld the dismissal of plaintiff's excessive force claim under *Heck* after finding that plaintiff's complaint "squarely call[ed] into question the legitimacy of [plaintiff's state] convictions for resisting arrest and second degree assault as to [the police officers]." *Id.* at * 3. However, under Colorado law, a police officer's use of "excessive force" is an affirmative defense to [the crimes of resisting arrest and second degree assault]." *Id*. (citing Colo. Rev. Stat. § 18-8-103(2)). In *Adams*, plaintiff presented this defense to the jury, and the jury received instructions to this effect. Therefore, in rendering a verdict against plaintiff, the jury was necessarily rejecting his excessive force defense.

No such facts exist in this case. Defendant has not provided any law identifying "excessive force" as a defense to the municipal charges brought against Plaintiff. Further, and more importantly, even if excessive force was an available defense to the relevant convictions, no evidence has been offered showing that this defense was presented to Judge Powers. The transcript of Plaintiff's municipal court trial demonstrates that the only evidence presented was the testimony of Defendant. Therefore, Plaintiff's resulting convictions did not carry with them an implicit

7

rejection of an excessive force defense, as occurred in *Adams*. The Court finds this distinguishing fact critical and therefore finds *Adams* inapposite to the instant case.

**IV.   Qualified Immunity**

Finally, Defendant maintains that this suit should be dismissed because he enjoys qualified immunity from suit. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Archuleta v. Wagner*, 523 F.3d 1278, 1282 (10th Cir. 2008) (citing *Wilson v. Lane*, 526 U.S. 603, 609 (1999)). "Defendant may properly raise qualified immunity in a Rule 12(b)(6) motion to dismiss; asserting such immunity in this fashion, however, 'subjects [Defendant] to a more challenging standard of review than would apply on summary judgment.'" *Galloway v. Hadl*, 548 F. Supp. 2d 1215, 1217 (D. Kan. 2008) (citing *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court directed courts to make two determinations in evaluating a defendant's motion to dismiss based on qualified immunity: (1) whether the facts, taken in a light most favorable to the plaintiff, set forth a constitutional violation; and (2) whether the violation was clearly established at the time the conduct took place. *Saucier*, 533 U.S. at 201. However, more recently, in *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Supreme Court altered the applicable analysis somewhat, holding that the two step analysis of *Saucier* should no longer be regarded as mandatory. The Court held that courts should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

8

*Pearson*, 129 S.Ct. at 818. The Supreme Court noted, however, that the sequence set forth in *Saucier* is often the appropriate analytical sequence. *Id.* In this case, the Court concludes that the two step analysis of *Saucier*, although no longer required, is appropriate.

With regard to the first determination, "[e]xcessive force claims are evaluated under the Fourth Amendment standard of reasonableness." *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). This standard requires a highly fact-specific examination of the totality of the circumstances confronting the officers at the time of the events in question. *See id.* at 414. Among the relevant factors that may be considered in this analysis are the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 414-15.

Applying these factors, the Court finds that the allegations of the Complaint, taken in a light most favorable to Plaintiff, set forth a constitutional violation sufficient to meet the first qualified immunity hurdle. Specifically, Plaintiff's Complaint alleges the following facts in support of her excessive force claim: (1) that Defendant "forcibly tackled [] Plaintiff" for walking the wrong way down the street; and (2) that "[a]t the time [] Plaintiff was being booked into jail for walking down the wrong side of the street, the Defendant became irritated at the Plaintiff and forcibly slammed the Plaintiff's head into the metal booking table causing a tooth to become lodged in her upper jawbone and also caused a facial contusion." (Compl. ¶¶ 9 & 12.) Taking these allegations as true, a fact-finder could conclude that the force exerted upon Plaintiff was excessive given the arguably trivial crime at issue (walking on the wrong side of the road) and the fact that Defendant "slammed Plaintiff's head" into a metal table because he was "irritated" with her.

9

The Court further finds that the rights at issue in this case were sufficiently established at the time of the events underlying Plaintiff's Complaint. "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Archuleta*, 523 F.3d at 1283 (internal citation omitted). "There need not be precise factual correspondence between earlier cases and the case at hand, because general statements of the law are not inherently incapable of giving fair and clear warning." *Id.* "The right must only be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.*

Assuming the truth of the facts alleged in Plaintiff's Complaint, a reasonable officer should have known that tackling a person for walking on the wrong side of the road and then subsequently slamming her head into a metal table after becoming irritated with her, "causing a tooth to become lodged in her upper jawbone and also caused a facial contusion," might constitute excessive force. (Compl. ¶¶ 9 & 12.) The Court therefore rejects Defendant's assertion of qualified immunity at the motion to dismiss stage.

## V.     Conclusion

For the reasons outlined herein, the Court DENIES Defendant Mark Wollmershauser, Jr.'s Motion to Dismiss (Doc. 14) and LIFTS the stay on discovery entered on August 26, 2008, by Magistrate Judge Joyner.

**IT IS SO ORDERED this 5th day of June, 2009**.

_____
**TERENCE KERN
UNITED STATES DISTRICT JUDGE**

10